UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PREMIUM CAPITAL FUNDING,
LLC, A New York Limited
Liability Company,

        Plaintiff,

   v.

AR HOME LOANS, INC., a
California corporation,
TIMOTHY BARRON, an
individual, and AMERICAN
MUTUAL FINANCIAL SERVICES,
a California corporation,

        Defendants.
_____/

NO. CIV. S-07-1185 LKK/EFB

O R D E R

Plaintiff, Premium Capital Funding ("PCF") alleges fraudulent real estate and mortgage loan transaction that induced it to fund mortgage loans based on materially false information and documentation and the omission of material information. The defendants are AR Home Loans ("AR") and Timothy Barron.[1] Pending before the court is AR's motion for summary

---

[1] Default has been entered as to defendants Brandon Thornton and American Mutual Financial Services. Plaintiff had originally

1

1 judgment on plaintiff's claims for breach of contract,
2 negligence, fraud, and negligent misrepresentation. Plaintiff
3 has cross-moved for summary judgment on the breach of contract
4 claim. The court resolves the motions on the papers and after
5 oral argument.

## I. FACTS[2]

PCF is a lender that funds loans using a warehouse line of credit. Affidavit of Marc Silvera In Support of Plaintiff's Motion for Summary Judgment ("Silvera Aff.") ¶ 2.[3] It then sells the loans and deeds of trust or other mortgage instruments to secondary market investors, who package them with other, similar loans and offer them as securities investments. Id. In order to be sold to secondary market investors, the loans must meet specific criteria. Id. ¶ 6. For the loan at issue here, it was required that the property be a primary residence (as opposed to an investment property), that the borrower have enough assets on

---

named Robert Szkotak as a defendant, but later omitted him as a defendant in its First Amended Complaint.

[2] All facts are undisputed unless otherwise noted. Plaintiff has not submitted a Statement of Undisputed Facts in support of its motion, as required by Local Rule 56-230(a). Plaintiff is admonished that further failure to comply with the Local Rules may be grounds for sanctions.

Nevertheless, plaintiff has provided evidence in support of its motion and thus, despite defendant's contention, its failure to supply a Statement of Undisputed Facts does not mean that defendant is entitled to judgment as a matter of law.

[3] The defendant objects to Mr. Silvera's affidavit on the grounds that he was not disclosed as an expert. This objection is overruled, as Mr. Silvera's affidavit is offered based on his personal knowledge of the facts therein and not as an expert.

2

hand to cover at least two months of the mortgage payments, and that the borrower have had a satisfactory rental history for at least twelve months. Id. ¶ 11. A loan that fails to meet the appropriate criteria remains on PCF's warehouse line of credit or is sold to secondary investors at a discount. Id. ¶¶ 6, 17.

According to the evidence tendered to the court, Timothy Barron, Brandon Thornton, and Christopher Rodriguez were involved in an investment scheme in which they obtained a particular property with a loan from the plaintiff, with the intention of reselling the property soon thereafter. Deposition of Christopher Rodriguez ("Rodriguez Depo.") 9:9-14. Rodriguez was to apply for the loan in his name under the pretense that he intended to use it as a primary residence. Id. He would resell it within 120 days to a buyer procured by Barron and would receive $10,000 for his participation. Id. Thornton, an employee of American Mutual Financial Services, would assist in obtaining the loan. Id. 37:18-21.

Thornton prepared a loan application and package for Rodriguez, which included the latter's credit report and bank statements, as well as an appraisal, license, title report and business contract. Rodriguez Depo. 37:18-21; Deposition of Daniel Orozco ("Orozco Depo.") 13:17-22. Thornton submitted the application and package to his employer, American Mutual Financial Services, but its lenders declined to fund the loan. Orozco Depo. 11:16-12:2. Upon the referral of Barron, Thornton then contacted Daniel Orozco, a mortgage consultant at AR, and

3

1  submitted the application and package to him for approval. Id.
2  10:21-23. Mr. Orozco had never dealt with American Mutual
3  Financial Services before, although he had had positive dealings
4  with Barron in the past. Id. 34:2-36:13.
5      AR and PCF had a Mortgage Broker Agreement, effective June
6  14, 2006, that set forth terms and conditions for the submission
7  of loan applications to PCF. Silvera Aff. ¶ 9. In it, AR agreed
8  that:

> all information set forth in mortgage application(s)
> prepared by [AR] for submission to [PCF], including
> written attachments thereto, is and shall be true,
> correct, currently valid and genuine
> No error, omission, misrepresentation, negligence,
> fraud, or similar occurrence with respect to an
> application or mortgage loan has taken place on the
> part of any person or entity, including without
> limitation, [AR], and its . . . employees,
> representatives and agents, the borrower, any
> appraiser, any builder or developer, or any person
> involved in the preparation and/or submission of an
> application and supporting documentation to Lender or
> the origination of a mortgage loan. . . . No
> representation, warranty or written statement made by
> or on behalf of [AR] in this Agreement, or in any
> written or verbal communication made to [PCF] in
> connection with the transaction contemplated hereby,
> contains or will contain, any untrue statement of a
> material fact or omits or will omit, to state a
> material fact necessary to make the statements
> contained herein or therein not misleading.

Thomas Decl. ¶2, Ex. A (Mortgage Broker Agreement) at 3.

   Orozco, through AR, submitted Rodriguez' loan application and package to PCF on August 29, 2006. Silvera Aff. ¶ 10. The application indicated that Rodriguez intended to occupy the property as his primary residence and that his bank account balance was $7,047. Orozco Depo. 17:12-18; Thomas Decl. Ex. B.

4

Both of these representations were false. Rodriguez Depo. 24:9-11, 31:5-14. The package included a Verification of Rent or Mortgage form, in which it was stated that Rodriguez had lived at a certain address since January 2003, which was also false. Rodriguez Depo. 33:1-34:6. On the application, Orozco indicated that he had completed the application through a telephone conversation with Rodriguez. Thomas Decl. Ex. B. He later admitted that he did not speak to Rodriguez to verify any of the contents of the application and package. Orozco Depo. 13:25-14:3. On the Verification of Rent or Mortgage form, Orozco indicated that he had sent this form to the manager of Rodriguez's rental property to be completed. In fact, he gave it to Thornton to complete. Id. 29:2-13, 31:2-11. Finally, Orozco did not disclose that the application had been referred to AR from another brokerage company. Id. 30:24-31:1.

The defendant has tendered evidence that, although an appraisal was part of the package submitted to PCF by AR, PCF also ordered its own appraisal on August 28, 2006. Def.'s SUF ¶ 16. PCF also ordered certain tax forms of Rodriguez's, which could have been used to obtain his credit report. Def.'s SUF ¶¶ 18-21. Additionally, PCF ran a credit report of the owner of AR. Def.'s SUF ¶ 25.

PCF approved the application and funded two loans for a total of $250,000. Silvera Aff. ¶ 13. Shortly thereafter, PCF attempted to sell the loan to a secondary market investor, who refused to purchase the loan as a securities investment. Id. ¶

5

1  14. The next month, Rodriguez informed PCF that he did not use
2  the property as his primary residence, that third parties had
3  agreed to make Rodriguez's loan payments, and that he had been
4  promised $10,000 for his role in applying for the loan. Id. ¶
5  15. PCF later sold the loan to another secondary market
6  investor, disclosing the loan's defects, for seventy-five
7  percent of the principal balance of the loan. Id. ¶ 17.

8      The defendant has tendered the deposition testimony of
9  Kurtis Colbert, who is offered as an expert. He testified that
10 there is nothing about the loan application or supporting
11 documents that would have given the broker reason to know that
12 Rodriguez intended to purchase the home as an investment, rather
13 than a primary residence. Deposition of Kurtis Colbert ("Colbert
14 Depo.")  82:3-10. Additionally, even if a credit report is
15 submitted with a loan application, the lender may nevertheless
16 ask the broker for a new report or order one itself. Id. 71:17-
17 72:7. If the lender orders a credit report, it is likely relying
18 on that report rather than the one submitted by the broker. Id.
19 72:8-11. Mr. Colbert testified that AR's conduct appears not to
20 have fallen below the standard of care in submitting Rodriguez's
21 application to PCF. Id. 83:25-84:23, 91:11-21. He qualified
22 this, however, by acknowledging that agent's failure to speak to
23 the borrower to determine whether all the information in the
24 loan application was true was "a dangerous place to put
25 yourself" and that he wouldn't do it himself. Id. 85:13-22.
26 ////

## II. STANDARD FOR SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S. at 289. In evaluating the

7

evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

### III. ANALYSIS

The parties cross-move for summary judgment on plaintiff's first cause of action, alleging AR's breach of contract. AR moves for summary judgment on the plaintiff's claims against it for negligence and negligent misrepresentation.[4] The court grants plaintiff's motion for summary judgment on the first cause of action and grants defendant's motion on the second and fourth causes of action.

**A.   Breach of Contract**

As the parties acknowledge, the contract is governed by New

---

[4] Defendant also moves for summary judgment on plaintiff's fraud claim. Plaintiff had previously dismissed this claim as to AR. See Order, October 2, 2007, at 2 n. 1.

8

York law.[5] See Thomas Decl. ¶ 2, Ex. A at 5. The elements of a breach of contract under New York law are: (1) the existence of a contract between the parties, (2) consideration, (3) performance by the plaintiff, (4) breach by the defendant, and (5) resultant damages. Furia v. Furia, 116 A.D.2d 694, 694-95 (2d Dept. 1986). Here, the parties do not dispute that the Broker Agreement was a valid, enforceable contract between them and that PCF fully performed its obligations under it. See AR's Answer to First Amended Complaint. AR also has admitted that PCF suffered damages, but disputes that its actions caused this. See id. The primary dispute between the parties is whether there is sufficient evidence of breach.

Under New York law, the plain terms of a fully integrated contract govern its interpretation. Henrich v. Phazer Antenna Corp., 33 A.D.3d 864 (2d Dept. 2006). Only where the contract is ambiguous may the court consider parol evidence of the parties' intent. Id. at 867. Here, the contract appears complete and clear in its terms. The contract is signed by representatives from AR and PCF and represents itself as fully integrated. Thomas Decl. ¶ 2, Ex. A (Broker Agreement) at 6. Defendant has tendered no evidence that this is not the case.

---

[5] Defendant AR makes the following argument relating to choice of law: "PCI (*sic*) has not identified any New York Case or Statute, or Law, that is contrary to the plain meaning of the ALI, Restatement of the Law of Agency, or California Law. Thus, PCI has waived the issue. . . ." The court is aware of no authority that supports defendant's interpretation of the application of a valid choice of law provision.

9

The provisions of the contract governing the disclosures AR was required to make to PCF appear clear and unambiguous. The contract states that AR promised that every time it submitted a loan application to PCF, the application would contain "no error, omission, [or] misrepresentation," or "any untrue statement of material fact," nor would it omit a material fact. Thomas Decl. ¶ 2, Ex. A at 3. This bound AR regardless of who prepared the application. Id.

Defendant argues that this requires a showing that AR was negligent. The plain language of the contract, however, indicates that AR promised to deliver to PCF loan applications that were free from error and misrepresentations and that included all material facts, regardless of who prepared the loan application. Thomas Decl. ¶ 2, Ex. A at 3 ¶ 13.d-e. These provisions are not qualified by a requirement that AR know or should know of the errors or omissions, which is notable particularly because the parties did include provisions in which AR's knowledge was an element. Compare Thomas Decl. ¶ 2, Ex. A at 3 ¶ 13.d-e with id. ¶ 13.g. Even if ambiguities in the contract existed, defendant has presented no evidence that the parties intended there to be a knowledge element in the provisions at issue.[6]

---

[6] Defendant's argument that the contract "prohibited AR from acquiring information about the buyer" is simply not supported by the language of the contract. The contract provision to which defendant cites prohibits the borrower from having had in his possession portions of the loan package, including a credit, income, employment, or deposit verification document, except when

10

Plaintiff has presented evidence that the loan application and package contained errors and misrepresentations, which is not disputed by defendant. This includes misrepresentations about the borrower's intent to use the property as a primary residence, his bank account balance, and his rental history. Rodriguez Depo. 24:9-11, 31:5-14, 33:21-23. This also included misrepresentations from Orozco regarding who completed the rental verification form and whether Orozco obtained the information on the loan application from the borrower directly. Orozco Depo. 13:25-14:3, 29:5-13. Each of these misrepresentations appears to violate the terms of the Broker Agreement. See Thomas Decl. ¶ 2, Ex. A at 3 ¶ 13.d-e.

Plaintiff has presented evidence, also undisputed by defendant, that it approved two loans to Rodriguez based on the representations contained in the loan application and package. Silvera Decl. ¶¶ 13, 18. Defendant argues that plaintiff obtained its own appraisal, undermining the assertion that it relied on the appraisal contained in the loan package. See Def.'s SUF ¶ 16. This is unpersuasive, as plaintiff does not plead or otherwise suggest that misrepresentations in the appraisal constituted a breach of the Broker Agreement. Defendant also asserts that plaintiff performed its own credit report on Rodriguez and conducted "its own investigation" prior to approving the loan. See Def.'s SSUF ¶¶ 31, 37, 39. Defendant,

---

the borrower had been asked to submit those documents to AR. See Thomas Decl. ¶ 2, Ex. A at 3 ¶ 13.h.

11

1  however, does not support this with evidence. Aside from
2  evidence of the appraisal ordered by PCF, the only evidence
3  tendered by defendant of PCF's independent investigation is that
4  PCF ordered a credit report and fraud detection report on AR.
5  Def.'s SUF ¶¶ 22, 25. This does not rebut plaintiff's evidence
6  that it relied on the representations about Rodriguez contained
7  in the loan application and package.

8  Finally, plaintiff presented evidence that it suffered
9  financial loss as a result of the misrepresentations in the loan
10 application and package. Silvera Decl. ¶¶ 16-17. Plaintiff does
11 not dispute this. See AR's Answer to First Amended Complaint.

12 Accordingly, plaintiff has shown that no reasonable jury
13 could conclude that the defendant did not breach the Broker
14 Agreement. Summary judgment is granted in plaintiff's favor as
15 to this cause of action.

**B.  Negligence**

17 In its second cause of action, plaintiff alleges that AR
18 breached its duty of reasonable care by submitting the loan
19 application package containing misrepresentations or omissions
20 or that failed to comply with the guarantees contained in the
21 Broker Agreement.

22 AR appears to seek summary judgment on three grounds. It
23 argues that its conduct did not fall below the standard of care
24 for the industry and that AR did not know or have reason to know
25 that the loan application contained errors. It also argues that
26 PCF did not rely on the information provided in the loan

12

application and package.[7]

Under California law, a defendant is negligent when it is shown that it owed a duty of care to the plaintiff, its conduct fell below that standard of care, and this breach of its duty was the proximate cause of the plaintiff's injury. Ladd v. County of San Mateo, 12 Cal. 4th 913, 917 (1996). A mortgage broker, like other professionals, has a duty to exercise a degree of care commonly exercised by other members of the profession in similar circumstances. 6 Witkin, Summary of California Law § 997 (10th ed. 2005) (citing 18 Am. Jur. Proof of Facts 559); see also Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal.4th 992, 997 (1994) ("as a general proposition, one is required to exercise the care that a person of ordinary prudence would exercise under the circumstances," internal quotation marks omitted).

The defendant first argues that no reasonable jury could find that AR did not exercise due care in Orozco's submission of the loan application and package to PCF. AR relies on the testimony of Kurtis Colbert, designated as an expert on preparation of loan packages. See Defendant AR Home Loans' Amended Final Witness List, Sept. 2, 2008, at 1. In his deposition, Mr. Colbert testified that, upon review of the loan application, "there is no indication that . . . the agent would

---

[7] Defendant also argues that an agent cannot be liable for the acts of the principal, which appear irrelevant to any of the causes of action.

know" the home was intended to be purchased as an investment, rather than a primary residence. Colbert Depo. 82:3-83:7. When asked "with regard to that fact," whether AR's conduct fell below the standard of care in the industry, Mr. Colbert responded, "In my opinion, what I see here would lead me to believe that this would be an owner-occupied purchase, and that it was prudent for them to believe that as well." Colbert Depo. 83:22-84:3.

Counsel then asked, "Was there any means for [the agent] to determine that buyer had made a false statement?" Mr. Colbert responded: "In my opinion, no. Again, I don't know the relationship between the two." Colbert Depo. 84:4-7. Counsel then asked the following:

> Assuming, hypothetically, that Orozco has dealt with Mr. Barron on three to four prior occasions, as stated in his deposition, and that he had suffered no adverse consequences in dealing with him as a loan originator previously, and knowing that this loan package had been turned down by somebody else, possibly turned down by somebody else, would Orozco have any reason to believe that Mr. Barron was acting inappropriately?

Colbert Depo. 84:10-17. Mr. Colbert responded, "It's a dangerous area to put yourself in, but based upon what you've given me as past experience, in my opinion it would be reasonable to feel okay in that situation." Colbert Depo. 84:20-23. He then clarified that the broker could have asked the borrower if he had made a false statement in the loan application and he reiterated that not doing so was "a dangerous place to put yourself" and that he wouldn't have done it. Colbert Depo.

14

1  85:10-86:6.

2　　Finally, Mr. Colbert testified that based on all the facts
3  he had reviewed regarding the loan application, nothing caused
4  him to believe that AR's conduct fell below the appropriate
5  standard of care. Colbert Depo. 91:11-92:2.

6　　Plaintiff's only theory in opposition to defendant's motion
7  summary judgment on this claim is that Mr. Colbert's testimony
8  supports their theory that AR was negligent by failing to verify
9  the contents of the loan application and package before
10 accepting it. Pl. Opp'n to Def.'s Mot. for Summ. J. at 3-4.
11 Plaintiff relies on Mr. Colbert's testimony that AR could have
12 contacted the borrower to verify the contents of the loan
13 application and that Mr. Colbert would have done that himself.
14 However, the standard of care is not defined by all the possible
15 actions a defendant could have taken nor what a person of
16 exceptional prudence would have done. Instead, AR and its agents
17 were only required to act as a reasonable member of the
18 profession would have done under the circumstances. See 6
19 Witkin, Summary of California Law § 997; Flowers, 8 Cal.4th at
20 997. Here, the defendant has presented uncontroverted evidence
21 that it was reasonable under the circumstances for Orozco not to
22 verify the contents of the loan application and package before
23 submitting it to PCF. For this reason, there is no evidence that
24 would permit a jury to find that AR's conduct fell below the
25 standard of care. Defendant's motion is granted as to this cause
26 of action.

**C.    Negligent Misrepresentation**

In its fourth cause of action for negligent misrepresentation, plaintiff alleges that AR knew that the loan application contained misrepresentations of material fact but it nonetheless submitted the application to PCF, who relied on it to its detriment.

Preliminarily, there appears to be a discrepancy between the elements of this cause of action under California law and the elements as plaintiff has asserted them. Under California law, negligent misrepresentation exists where the defendant represented to plaintiff that a material fact was true, that the fact was not true, and that the defendant had no reasonable grounds to believe that it was. Cal. Civ. Code § 1710(2); see also Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986). Plaintiff has pled the claim as including scienter and adheres to this theory in its opposition to defendant's motion for summary judgment. Pl. Opp'n to Def.'s Mot. for Summ. J. at 3 ("[O]f the three remaining causes of action against AR . . . only one (negligent misrepresentation) requires PCF to demonstrate that AR had knowledge of the Borrower's misrepresentations."). The summary judgment inquiry, however, rests on whether the moving party has shown that there is a "failure of proof concerning an essential element of the non-moving party's case." Celotex, 477 U.S. at  322-23. Defendant's knowledge of the falsity of the representations made in the loan application is not an essential element of negligent misrepresentation. See Cal. Civ. Code §

16

1710(2); Fox, 181 Cal. App. 3d at 962. Instead, plaintiff need only show that AR had no reasonable grounds on which to believe that the representations in the loan application and package were true.

As explained above, plaintiff has not adduced evidence that would permit a jury to conclude that AR had no reasonable grounds to believe that the facts contained in the loan application were true. The only evidence tendered to the court is the expert testimony of Mr. Colbert, who testified that AR was reasonable in accepting as true the information contained in the loan application. See Colbert Depo. 84:4-7, 84:20-23. The plaintiff has not tendered evidence to show that it could bear its burden of proof on this element of the claim at trial. See Celotex, 477 U.S. at 322-23. Defendant's motion is granted as to this claim.

## IV. CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment (Doc. No. 62) is GRANTED. Defendant's motion for summary judgment (Doc. No. 56) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

DATED:  October 22, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT